UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   v.<br><br>LEONEL BARRAGAN BARAJAS,<br><br>        Defendant. | No. CR-04-2011-FVS<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT |

**THIS MATTER** came before the Court for oral argument on Defendant's Motion to Dismiss the Indictment. (Ct. Rec. 46). Assistant United States Attorney Gregory M. Shogren appeared on behalf of the United States. Defendant was present and represented by Nicholas Marchi. Deputy United States Marshal Jeffrey Marty testified on behalf of the United States. Defendant proffered the testimony of Uriel Barajas. This order is intended to memorialize and supplement the Court's February 10, 2011 oral ruling.

**BACKGROUND**

Defendant was charged on January 13, 2004, with conspiring to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine (Count 1) and the distribution of methamphetamine (Count 4). (Ct. Rec. 1). Defendant was not located with respect to these charges until he was arrested on the outstanding warrant on April 29, 2010 following a traffic stop near Vancouver, Washington.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT - 1

On August 5, 2010, Defendant moved to dismiss the indictment in this case. (Ct. Rec. 46). Defendant argues that the indictment should be dismissed because the delay in bringing him to trial violated his Sixth Amendment right to a speedy trial. *Id.*

**FINDINGS OF FACT**

The Court makes the following findings of fact:

1. The Indictment was filed on January 13, 2004.

2. A warrant for Defendant's arrest was issued on January 14, 2004.

3. Shortly thereafter, the DEA provided information to the U.S. Marshal's Office in order to have Defendant located, and the U.S. Marshal's search for Defendant commenced.

4. On February 17, 2004, Deputy Marshals Jeff Marty and Mike Martinez checked an address believed to be Defendant's residence at 140 Parkland Drive in Sunnyside, Washington, and ran a vehicle registration.

5. On February 18, 2004, Deputy Marty spoke with DEA Agent Jake Gilliam about different vehicles Agent Gilliam believed were associated with Defendant.

6. On February 25, 2004, Deputy Marty acquired information from the Sunnyside Police Department about a green Honda that Defendant had been stopped in by the Sunnyside Police Department.

7. On February 26, 2004, Deputy Marty received information that Defendant was possibly in the Portland, Oregon area with a brother.

8. On March 1, 2004, Deputies Marty and Martinez spoke with Sunnyside Police Department officers and checked several addresses in

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT - 2

Sunnyside looking for a white Ford Tauras Agent Gilliam had indicated Defendant might be driving.

9.  On March 23, 2004, Deputy Martinez did surveillance at 306 Columbia Street in Sunnyside, an address believed to be a residence where Defendant's relatives lived.

10. Deputy Marty testified that he would also often stop and investigate residences and vehicles in Sunnyside in relation to the case.

11. On May 20, 2004, Deputies Marty and Martinez interviewed Jose Barajas, an individual believed to be Defendant's brother, at 515 Victor Way in Sunnyside.  Deputy Marty indicated that Defendant's parents were also believed to be at the residence at the time of the interview.

12. Jose Barajas had no difficulty conversing in the English language.  The deputies informed Jose Barajas there was a warrant for Defendant's arrest.

13. Defendant's proffer indicates that Defendant does not have a brother named Jose Barajas, and Defendant's brother, Uriel Barajas, was not contacted by the U.S. Marshal's Office.

14. On June 9, 2004, Deputy Marty contacted DEA in Yakima about a subpoena for information.

15. On June 21, 2004, Deputy Marty made additional computer inquiries on license plates for an individual named Beatrice Santa Cruz.

16. In May of 2005, Deputies Marty and Martinez did surveillance on multiple residences in Sunnyside, including 140 Parkland Drive, 306

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT - 3

Columbia and 320 Crescent, and checked various license plates for registration.

17.  On June 8, 2005, Deputies Marty and Martinez spoke with Rosalva Barajas, an individual believed to be Defendant's wife or ex-wife, about a vehicle that was for sale.

18.  In August of 2005, Deputy Marty requested a copy of the driver's license for the Defendant to obtain a digital photo.

19.  On November 5, 2005, a collateral lead request was sent to the District of Oregon for investigation.

20.  Deputy Dale Ortman and a Troutdale Police Officer investigated the information on the collateral lead.

21.  On November 29, 2005, Deputy Ortman indicated he was not able to find anything on Defendant.

22.  On May 9, 2007, Uriel Barajas, Defendant's brother, contacted Dan Peterson, a Sunnyside attorney, to investigate whether there was a warrant for Defendant's arrest.  Mr. Peterson contacted the Marshal's Office as well as the Washington State Department of Licensing.  He was not able to locate a warrant for Defendant's arrest.

23.  Deputy Marty testified that, in November of 2007, he was contacted by telephone by a woman believed to be Defendant's mother. Deputy Marty was asked whether Defendant could reenter from Mexico, and he responded that Defendant could reenter.

24.  Defendant's proffered testimony indicates that Defendant's mother does not speak English and never contacted the U.S. Marshal's Office.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT - 4

25. On January 12, 2009, there was a case review performed by Deputy Doty, a U.S. Marshal's supervisor from Spokane.

26. On April 29, 2010, Defendant was arrested in the District of Oregon following a traffic stop.

27. Defendant was arraigned with respect to the charges in this case on May 19, 2010.

**CONCLUSIONS OF LAW**

The Court makes the following conclusions of law:

1. The Sixth Amendment to the Constitution "guarantees that in all criminal prosecutions, the accused shall enjoy the right to a speedy trial." *Doggett v. United States*, 505 U.S. 647, 651 (1992) (internal quotations omitted).

2. To determine whether that has occurred, the Court must examine the *Barker* factors: "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *Id.* at 651; *Barker v. Wingo*, 407 U.S. 514 (1972); *see also United States v. Beamon*, 992 F.2d 1009, 1012 (9th Cir. 1993).

3. None of these four factors, however, is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Barker*, 407 U.S. at 533. Rather, they must be considered "together with such other circumstances as may be relevant," and the Court must "engage in a difficult and sensitive balancing process." *Id.*

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT - 5

**I.   Whether Delay Was Uncommonly Long**

4.   To trigger a speedy trial inquiry, an accused must first show that the period between indictment and trial passes a threshold point of "presumptively prejudicial" delay.

5.   Courts have generally found delays approaching one year to be "presumptively prejudicial." *Beamon*, 992 F.2d at 1012; *see also Doggett,* 505 U.S. at 652 n. 1.

6.   Since the over seven year delay, here, is well over the one-year mark, the threshold point has been met and the speedy trial inquiry under *Barker* has been triggered.

**II.   Reasons for the Delay**

7.   *Barker* explained that the Government's bad faith or negligence in causing unnecessary delay should weigh against the Government, while delay caused by valid reasons should not. *Barker*, 407 U.S. at 531.

8.   The Government has some obligation to pursue a defendant and bring him to trial. *United States v. Sandoval*, 990 F.2d 481, 485 (9th Cir. 1993). If the Government fulfills that obligation by pursuing a defendant with reasonable diligence, the defendant does not have a speedy trial claim. *Doggett*, 505 U.S. at 656.

9.   The Government is required to make some effort to notify a defendant of the indictment or otherwise continue to actively attempt to bring him to trial. *United States v. Mendoza*, 530 F.3d 758, 763 (9th Cir. 2008).

10.   While the Government can be commended for its efforts in 2004 and 2005, there has been no evidence presented that the

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT - 6

Government took any affirmative action to pursue Defendant's arrest from November 29, 2005, until the time of his arrest on April 29, 2010, a nearly four and one-half year period of time.

11. With respect to the November 2007 telephone conversation with a woman Deputy Marty believed to be Defendant's mother, there is conflicting evidence. Defendant's proffered testimony asserts that Defendant's mother never contacted the U.S. Marshal's Office and that Defendant's mother is not even able to communicate in English.

12. Even assuming the individual calling the U.S. Marshal's Office was Defendant's mother, there is no evidence that the mother was informed there was a warrant for Defendant's arrest. Nor was evidence presented which indicates any effort was made to cause Defendant to report to law enforcement in order to effectuate an arrest.

13. With regard to the case review performed by Deputy Doty on January 12, 2009, the record does not reflect any affirmative action was taken at that time.

14. The Government is not required to "make heroic efforts to apprehend a defendant who is purposefully avoiding apprehension." *Sandoval*, 990 F.2d at 485 (quotations omitted).

15. However, if the defendant is not attempting to avoid detection and the government makes no serious effort to find him, the government is considered negligent in it pursuit. *Doggett*, 505 U.S. at 653.

16. Although the Government asserts that Defendant's family was informed there was a warrant for Defendant's arrest on May 20, 2004,

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT - 7

there is a conflict with respect to this information as well.

17. Deputy Marty testified that he interviewed Defendant's brother, Jose Barajas, in the presence of individuals believed to be Defendant's parents, and informed Jose Barajas that there was a warrant for Defendant's arrest.

18. Defendant's proffer indicates that he does not have a brother named Jose Barajas. Furthermore, there is no evidence confirming that the individuals present at the time of the interview were in fact Defendant's parents.

19. Based on the information presented, it cannot be determined that Defendant's family members were made aware of a warrant for Defendant's arrest on May 20, 2004.

20. While there is an inference that Defendant may have resided in Mexico during a period of time relevant to this matter, there has been no testimony presented confirming that Defendant ever lived outside of the United States.

21. On the contrary, information provided suggests that Defendant was living in Vancouver, Washington, and using his own name and driver's license.

22. There has been no showing that Defendant was attempting to avoid detection.

23. The Government made no affirmative efforts to bring Defendant to trial during a nearly four and one-half year period of time. While there is no evidence of bad faith on behalf of the Government in this case, the Government failed to exercise due diligence. Consequently, the Court finds that the delay between

Defendant's indictment and arrest was caused by the Government's negligence.

24.  *Barker's* second factor, reasons for the delay, weighs in favor of the Defendant.

**III.  Whether Defendant Asserted the Right to a Speedy Trial**

25.  Defendant's proffer indicates that Defendant's family contacted an attorney to check whether Defendant had warrants for his arrest and none were located.

26.  There is no evidence contradicting the proffered testimony in this regard.

27.  Once arrested, Defendant promptly asserted his speedy trial rights.

28.  Accordingly, the third *Barker* factor weighs in favor of Defendant.

**IV.  Whether Delay Results in Prejudice to Defendant**

29.  A defendant may attempt to show "actual prejudice" by presenting proof that the post-indictment delay has harmed one or more of the three interests protected by the speedy trial right:  "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired."  *Barker*, 407 U.S. at 532; *see also Beamon*, 992 F.2d at 1014.

30.  In addition, pursuant to *Doggett* and *United States v. Shell*, 974 F.2d 1035 (9th Cir. 1992), even in the absence of proof of actual prejudice, the Government's negligence and a substantial delay will suffice to grant relief.  *Shell*, 974 F.2d at 1036 ("no showing of

prejudice is required when the delay is great and attributable to the government").

32. In *Doggett*, the Supreme Court concluded that an eight and one-half year delay caused by the government's negligence and unaccompanied by the defendant's acquiescence was long enough so that, "an affirmative proof of particularized prejudice was not essential." *Doggett*, 505 U.S. at 656.

32. In *Shell*, the Ninth Circuit held that a five year delay caused by Government negligence created a "strong presumption" of prejudice which the Government did not persuasively rebut by simply suggesting that most of the essential witnesses and documentary evidence is still available. *Shell,* 974 F.2d at 1036.

33. In this case, the Court finds that the nearly four and one-half year delay is "great" when measured by the five year delay in *Shell* and the eight and one-half year delay in *Doggett*.

34. Furthermore, as discussed above, the delay is attributable to the Government because the Government failed to exercise due diligence in this case.

35. There is, therefore, a strong presumption that Defendant suffered prejudice, which the Government has not rebutted.

36. The fourth *Barker* factor also weighs in favor of Defendant in this case.

37. Because Defendant has demonstrated that (1) the period between indictment and trial passes a threshold point of "presumptively prejudicial" delay, (2) the Government failed to exercise due diligence in actively pursuing Defendant's arrest, (3)

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT - 10

Defendant promptly asserted his speedy trial rights following his arrest, and (4) there is a strong presumption that Defendant suffered prejudice which has not been rebutted by the Government, the Court finds that the *Barker* factors weigh in favor of a speedy trial violation.

38.  While there is no evidence of intentional conduct or bad faith by the U.S. Marshal's Service or the Government in this case, there is no evidence in the record that explains the nearly four and one-half year period of time where it appears very little effort was made to apprehend and bring Defendant to trial.

39.  Defendant's Sixth Amendment rights have been violated; thus, a dismissal of the Indictment is warranted.

The Court being fully advised, **IT IS HEREBY ORDERED** Defendant's Motion to Dismiss the Indictment (**Ct. Rec. 46**) is **GRANTED.**  The Indictment shall be dismissed, with prejudice, all pending motions are denied as moot, and the trial schedule is vacated.

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this  15th  day of February, 2011.

                        S/Fred Van Sickle
                        Fred Van Sickle
            Senior United States District Judge